RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
Assistant United States Attorney
California Bar No. 112520
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-7976
Email: Melanie.Pierson@usdoj.gov

TODD KIM
Assistant Attorney General
STEPHEN DA PONTE
Trial Attorney
Florida Bar No. 58454
150 M Street, N.E.
Washington, D.C. 20002
Telephone: (202) 305-2729
Email: Stephen.DaPonte@usdoj.gov
Attorneys for United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 23-cr-01661-JO |
|---|---|
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| CONSTANCIO ESTUYE, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, United States Attorney, Melanie K. Pierson, Assistant United States Attorney, Todd Kim, Assistant Attorney General, and Stephen Da Ponte, Senior Trial Attorney, and Defendant CONSTANCIO ESTUYE, with the advice and consent of Michael Zweiback, Esq., counsel for Defendant, as follows:

//
//
//

Plea Agreement                                         Def. Initials ___

# I

## THE PLEA

Defendant agrees to waive Indictment and plead guilty to Count 1 of an Information charging Defendant with:

> On or about October 14, 2022, within the navigable waters, internal waters, and ports of the United States in the Southern District of California, CONSTANCIO ESTUYE, the defendant, did knowingly fail to maintain an accurate Oil Record Book for the Star Maia. Specifically, the defendant, maintained and caused to be maintained an Oil Record Book that: (1) failed to record the discharges of oily bilge water from the Bilge Holding Tank and the Clean Bilge Tank into the ocean; and (2) erroneously recorded that oily bilge water had been discharged using the Oil Water Separator (OWS) when in fact the OWS had not been used. All in violation of Title 33, United States Code, Section 1908(a); Title 33, Code of Federal Regulations, Section 151.25; and Title 18 United States Code, Section 2.

The Government agrees to (1) defer any other charges based on the same conduct, and (2) not prosecute Defendant thereafter on such deferred charges unless Defendant breaches the plea agreement, or the guilty plea entered pursuant to this plea agreement is set aside for any reason. If Defendant breaches this agreement or the guilty plea is set aside, section XII below shall apply.

# II

## NATURE OF THE OFFENSE

A.  ELEMENTS EXPLAINED

The offense to which Defendant is pleading guilty has the following elements:

1. The Star Maia was a commercial vessel of 400 or more gross tons that was registered in a country other than the United States;

2. The Defendant, as the Chief Engineer of the vessel, was a person in charge of engine room operations for which entries are required to be fully and completely recorded in the Oil Record Book;

3. On or about the date charged, when the Star Maia entered the navigable waters, internal waters, and ports of the United States, and while the vessel remained therein, the Master failed to maintain an Oil Record Book in which the discharges or disposal otherwise of oily bilge water were accurately recorded as required by U.S. law;

4. The Defendant did aid and abet another in so doing, to wit, the Master of the Star Maia; and

5. The Defendant acted knowingly.

B. ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which the Defendant is pleading guilty. The following facts are true and undisputed:

1. The Defendant. Defendant CONSTANCIO ESTUYE is a Filipino citizen and licensed to serve as the "Chief Engineer" onboard commercial vessels. The defendant was an agent and employee of ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD. (ZEABORN), the corporate operator of the commercial vessel Star Maia, and the defendant acted within the scope of his agency and employment with ZEABORN

when serving as the Chief Engineer of the commercial vessel Star Maia.

2. <u>The Vessel</u>. The commercial vessel Star Maia (International Maritime Organization Number 9189940) was a 29,668 gross ton vessel, registered and operated under the flag state administration of Isle of Man. The Star Maia was engaged in international commercial maritime operations transporting cargo to and from San Diego, California, and elsewhere. The Defendant was the Chief Engineer of the Star Maia, and as such was assigned as the person in charge of the vessel's engine room. The Defendant was responsible for, among other things, shipboard control of machinery space waste, to include oily bilge water. In addition to the Defendant Chief Engineer, the Star Maia had a "Second Engineer," a "Third Engineer," an "Oiler," a "Wiper," and 2 "Fitters" who assisted the Defendant.

3. Prior to the Star Maia's arrival at the Port of San Diego, the U.S. Coast Guard received a report claiming that crewmembers in the engine room had discharged oily bilge water directly overboard into the ocean, and that garbage had been burned in barrels onboard the vessel.

4. When the Star Maia arrived at the Port of San Diego on October 14, 2022, the U.S. Coast Guard conducted an inspection of the vessel. During the inspection, the U.S. Coast Guard obtained evidence establishing that several overboard discharges of oily bilge water had been conducted without using the required pollution prevention equipment, and that these discharges had not been recorded in the vessel's Oil Record Book as required

by law. Additionally, the U.S. Coast Guard obtained evidence that on several occasions, garbage (including paper, plastics, and oily rags) had been burned in barrels on the deck of the vessel and these barrels had been subsequently thrown into the ocean.

5. The Defendant was first onboard the Star Maia as the Chief Engineer from August 2021, through May 2022. He returned to the Star Maia as the Chief Engineer in August 2022. After coming onboard in August 2022, the Defendant saw garbage being burned in barrels onboard the vessel and saw the vessel's Master order the garbage to be burned in barrels. The type of garbage burned included paper, plastics, and oily rags. After the burning was complete, a crew member threw the barrels used to burn the garbage into the ocean.

6. On or about August 26, 2022, in preparation for the Star Maia's port call in San Diego, California, the Master instructed the Defendant to follow a shipboard checklist to inspect the vessel's pollution prevention equipment, to include the Oil Water Separator and Oil Content Monitor (which keeps an electronic record of when the system is operated), and the vessel's Oil Record Book to ensure there were no discrepancies. This inspection revealed that the Oil Water Separator had not been used since May 2022, despite three entries in the Oil Record Book (June 17, 2022, July 9, 2022, and July 29, 2022) claiming that the system had been used. In all, these three Oil Record Book entries falsely recorded a total of approximately 6,762 gallons of oily bilge water having been processed through

the Oil Water Separator when this oily bilge water had in fact been discharged directly overboard into the ocean.

7. The shipboard investigation determined that the Second Engineer had been bypassing the vessel's Oil Water Separator and discharging oily bilge water from the bilge water holding tank directly into the ocean by opening valve BL-15 and using the general service pump[1]. The Master reported this situation to a shoreside Superintendent of ZEABORN. The Superintendent told the Master to fire the Second Engineer and remove him from the vessel at the next port call in Panama before the vessel reached San Diego. The Superintendent also arranged for an auditor to meet the vessel in Panama to assist in preparing for the vessel's scheduled arrival in San Diego and anticipated U.S. Coast Guard inspection.

8. On or about September 30, 2022, an auditor hired by ZEABORN attended the Star Maia in Balboa, Panama. The Defendant asked the auditor if entries should be made to the Oil Record Book to correct the false entries that had been previously made (claiming the Oil Water Separator had been used when it had not). The auditor advised not to make any corrections to the Oil Record Book because he thought the U.S. Coast Guard would not be interested in the discrepancies. The Defendant also asked if the investigation report and explanation of the termination of the Second Engineer should be attached to the Oil Record Book to explain the discrepancies and the auditor advised the

---

[1] Engine room crew members maintain that this was the routine practice onboard the Star Maia and was being done with the knowledge of Defendant ESTUYE. However, Defendant ESTUYE denies knowing about this practice before the shipboard investigation.

Defendant not to include a letter or make any corrective entries because the U.S. Coast Guard would not be interested in discrepancies going back four months in time.

9. After the Star Maia departed Balboa, Panama, and was headed to San Diego, California, the Defendant ordered a lower-ranking crew member to discharge oily bilge water from the Clean Bilge tank directly into the ocean using the general service pump, bypassing the Oil Water Separator. This lower-ranking crew members refused to follow this order, so the Defendant directed a second lower-ranking crew member to do it. This second crew member initially refused, but the Defendant told him that he (the Defendant) would stand lookout on the deck of the vessel and would radio the crewmember to stop discharging if he saw any visible traces of oil discharge on the surface of the water. The crewmember reluctantly agreed, and approximately 3 cubic meters (approximately 792 gallons) of oily bilge water was then discharged directly into the ocean from the Clean Bilge Tank.

10. On or about October 14, 2022, when the Star Maia called at the port of San Diego, California, the Defendant knowingly maintained and caused to be maintained an Oil Record Book that: (1) failed to record the discharges of oily bilge water from the Bilge Holding Tank and the Clean Bilge Tank into the ocean; and (2) erroneously recorded that oily bilge water had been discharged using the Oil Water Separator when in fact that equipment had not been used. All in violation of Title 33, United States Code, Section 1908(a); Title 33, Code of Federal

Plea Agreement                           7                        Def. Initials  S.

Regulations, Section 151.25; and Title 18 United States Code, Section 2.

## III

## PENALTIES

The crime to which Defendant is pleading guilty carries the following penalties:

A. not more than a 6-year term of imprisonment;

B. a fine not to exceed $250,000;

C. not more than a 3-year term of supervised release. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release;

D. a mandatory special assessment of $100; and

E. restitution to any victims of the offense.

## IV
## DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of Defendant; and

F. Not testify or have any adverse inferences drawn from the failure to testify.

Defendant has been advised by counsel and understands that because defendant is not a citizen of the United States, defendant's conviction in this case may have adverse immigration consequences, including defendant's removal or deportation from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future.

## V
## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutors in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI
## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A.  Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up,

Plea Agreement                                9                       Def. Initials 

and rendered ineligible to receive, valuable civic rights and government benefits. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B.   No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C.   No one has threatened Defendant or Defendant's family to induce this guilty plea.

D.   Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA & ENVIRONMENT AND NATURAL RESOURCES DIVISION

This plea agreement is limited to the United States Attorney's Office for the Southern District of California and the Environment and Natural Resources Division of the United States Department of Justice and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

### APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in



the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

### SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

## X

### PARTIES' SENTENCING RECOMMENDATIONS

A.   SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties agree on the appropriateness and applicability of, and will



jointly recommend, the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

```
Base Offense Level [§ 2Q1.3(a)]            6
Acceptance of Responsibility [§ 3E1.1]    -2
Role [§3B1.1(c)]                          +2
Discharge of pollutant [§2Q1.3(b)(1)(B)]  +4
```

B. ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;
2. Falsely denies prior criminal conduct or convictions;
3. Is untruthful with the Government, the Court or probation officer;
4. Attempts to challenge or undermine the applicability or appropriateness of any Guideline Adjustment or Offense Characteristic listed in paragraph A above; or Breaches this plea agreement in any way.

C. FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant may request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The Government will oppose any downward adjustments, departures, or variances not set forth in Section X, paragraph A above.

//
//

Plea Agreement                          12                    Def. Initials 

D. **NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY**

The parties have **no** agreement as to Defendant's Criminal History Category.

E. **"FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION**

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F. **PARTIES' RECOMMENDATIONS REGARDING CUSTODY**

The Government will recommend that Defendant be sentenced to the low end of the advisory guideline range recommended by the Government at sentencing. If that low end of the range is less than the amount of time Defendant has already served in custody, the Government will recommend a sentence of time-served or probation.

G. **SPECIAL ASSESSMENT/FINE/RESTITUTION/FORFEITURE**

1. Special Assessment

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100 per felony count of conviction, for a total of $100, to be paid forthwith at time of sentencing. Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

2. Fine

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

//

Plea Agreement 13 Def. Initials

3. Restitution

The parties are not aware of any identifiable victim of the offense for which restitution is appropriate, and therefore will jointly recommend that no restitution be ordered in this case.

4. Forfeiture

Federal law states Defendant must forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds obtained directly or indirectly from the offense. The parties are not aware of any property subject to forfeiture in this case, and will jointly recommend that no property of the Defendant be forfeited.

H. SUPERVISED RELEASE/PROBATION

If the Court imposes a term of supervised release or probation, Defendant will not seek to reduce or terminate early the term of supervised release or probation until Defendant has served at least 2/3 of the term and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

XI

DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order up to $100,000. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exceptions are 1) Defendant may appeal a sentence of a fine above the high end of the guideline range recommended by the Government at sentencing, and 2) Defendant may collaterally attack the conviction or

sentence on the basis that Defendant received ineffective assistance of counsel. If Defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

## XII

### BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility;
3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any court order related to this case;
6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement;
7. Engaging in additional criminal conduct from the time of arraignment until the time of sentencing; or

Plea Agreement 15 Def. Initials

        8. Challenging or undermining the applicability or appropriateness of any Guideline Adjustment or Offense Characteristic listed in Section X, paragraph A, above.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by the Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

<gt;

and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it, or it has been read to him in his native language. Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//
//
//
//
//
//
//
//
//
//



xv

## DEFENDANT SATISFIED WITH COUNSEL

The defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

RANDY S. GROSSMAN
United States Attorney

July 04, 2023
DATED

MELANIE K. PIERSON
Assistant U.S. Attorney

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

July 01, 2023
DATED

STEPHEN DA PONTE
Senior Trial Attorney

4/4/2023
DATED

MICHAEL ZWEIBACK
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.**

27 MARCH 2023
DATED

CONSTANCIO ESTUYE
Defendant

Plea Agreement              18              Def. Initials